Good morning, Your Honors. I may please the Court. My name is Paul Hurst, and I represent Appellant Motorola Inc. I'd like to reserve three minutes for rebuttal. Today I plan to focus on two issues raised in our briefing, the lack of subject matter jurisdiction below, and the District Court's erroneous decision to dismiss Motorola's claim for novation. First, the District Court erred in finding subject matter jurisdiction below. In exercising jurisdiction, the District Court erred because there was no actual controversy arising from the TransLink contract. The TransLink contract is currently being performed, and MTC's complaint never identifies a single threat to performance. The only purported controversy identified in MTC's complaint relates to the automatic reduction of a letter of credit from $3 million to $1.5 million, which can only be accessed in the event of default. Now, this alleged controversy over this amount of the letter of credit has been completely manufactured by MTC, and MTC is using that manufactured controversy to get its foot in the door to obtain a sweeping declaration about the entire contract to resolve future hypothetical disputes that have not yet arisen. Now, here, accepting MTC's allegations is true. The TransLink contract only requires the issuance of a $3 million letter of credit from a creditworthy bank in MTC's favor. Now, under the contract I gather if you apply your analysis, it would apply to your cross-claim or counterclaim as well, that there's no subject matter jurisdiction over that either. Our counterclaim of novation, it doesn't. Yes, exactly right, Your Honor. Initially, MTC's complaint was filed and we moved to dismiss it for lack of subject matter jurisdiction. And when filing our counterclaims in our jurisdiction section, we reserved our position that there was no jurisdiction to begin with, but since we were required to proceed, we asserted our novation claim, which we don't think has arisen yet, Your Honor. Now, the benefit of the bargain that MTC negotiated in the TransLink contract is the existence of a letter of credit. And that's under California law and under the contract, it's irrelevant who causes the issuance of the letter of credit or who pays the premium for it. In fact, the very purpose of a letter of credit is to obtain a commitment from a neutral creditworthy bank. This is not a letter of credit from Motorola. This is a letter of credit from a back-by-bank like Wells Fargo. It is therefore immaterial who arranges the letter of credit, and Article 3.1 of the TransLink contract does not care who provides it. It could have been provided by Motorola, a subcontractor, or even a stranger to the contract, provided that there's a letter of credit in place. And that's exactly what Motorola and ERG offered to do here. Both companies offered to restore the letter of credit to $3 million, but MTC refused those offers in order to create this controversy to get into federal court. Now, MTC has conceded in its pleadings below that Motorola has the right to rely on subcontractors to perform the contract. And, in fact, ERG, Motorola's subcontractor, is performing every aspect of this contract. All contract deliverables are being performed by ERG. Yet MTC picks this one issue to reject in order to create a controversy for this Court. And there's absolutely no basis in the contract to support MTC's position about this letter of credit because it does not matter. Here, there's really no adverse interest because the contract only requires a letter of credit in place. And that is exactly what was offered by ERG. Is it your position that, as a matter of law, it doesn't matter who stands behind the letter of credit or who issues it? Well, who stands behind the letter of credit does matter. What they did want was a letter of credit issued by a creditworthy bank. And that's exactly what's been offered from ERG, and they don't dispute that. What does not matter is who arranges for the letter of credit. They want the letter of credit in place in case there's a default that they can immediately get $3 million. And with the letter of credit in place, the benefit of the bargain that they negotiated is secured, and they can get that. And it doesn't matter who arranges the letter of credit. Now, in its brief, MTC also alleges that a case of controversy arises because Motorola has disavowed its contractual responsibilities. Now, the problem with this argument is that MTC's complaint never alleges any controversy. It fails to identify a single unperformed concoction provision, any threat to performance, or any harm arising from ERG's continued performance of the contract. That sounds a lot like the merits to me. I mean, you have one side saying Motorola has to provide a $3 million letter of credit, and it isn't, and that's a breach of our agreement. And you're saying, well, it isn't a breach, but that sounds like a response on the merits. You disagree about whether there's a breach, and I don't see why that isn't a case in controversy. Well, we think if you look at the – well, first off, as a matter of law, it doesn't matter who provides the letter of credit. It matters that it's there. And so the fact that there was one on the table from a creditworthy bank. But my point is that's a response on the merits. You guys disagree about the law and who's right under the contract and who's right under the law. I mean, the very fact that you dispute it seems to be a dispute. And you may be right on the merits, but I don't understand why that's a subject matter jurisdiction problem. Well, we believe it's a subject matter jurisdiction, because as a matter of law, this Court can decide that it doesn't matter that there's a – who pays the premium for the letter of credit. If you look at the contract. But to make that decision, we have to exercise our jurisdiction, right? Well, it's our position as a matter of law, it doesn't matter who provides it. There was one on the table, and they're accepting the ERG's deliverables in all aspects. Well, a matter of contract. It says the contractor provides it, right? It also provides that – and moral obligation is to make sure it was in place, not to actually provide it. And all it requires is a creditworthy bank to issue it. Well, it says the contractor has provided additional security, right? And it's our position that provided that there's a letter of credit on the table, which there was, from a creditworthy bank, that is the benefit of the bargain that MTC negotiated, to have a letter of credit there in case of a default. Now, with respect to their argument that Motorola has disavowed its contractual responsibilities, the problem is, is that Motorola never – I'm sorry, MTC has never alleged a controversy here. Whether – here, whether Motorola is still a part of the contract only matters if ERG fails to perform any aspect of the contract. And they've not alleged a single threat to performance by ERG. And this case is no different than two cases cited in our brief, Clinton v. IKEA and United Steel Workers case. Well, your position is you don't have any obligations under the contract, right? That is our position. That's right. So that's how you do it. But that's looking at our counterclaims, Your Honor. Our position here is the letter of credit was put on the table and they refused that to create this controversy. Right now, there's not a right controversy as to whether we have any responsibility under the contract. Right now, ERG is performing this contract. And whether they're performing under the name of a major subcontractor or prime contractor is quite irrelevant, because the contract's being performed. And that's why this case is just like Clinton v. IKEA. Well, except that basically your argument is to accept – to accept your argument is that you have the right of unfettered right of assignment. It doesn't matter. The fact that the – I know this isn't this case, but let's say it's a personal service contract. And we know those cannot be assigned, because the contractors rely on the expertise. But you would take that – essentially, your argument would be you can assign it at will. Well, what – Because what your – your position is we don't have to do anything under the contract. We're not obligated. And you can't bring us into court on that theory unless our subcontractor, who you consider the prime contractor, doesn't perform. What we're saying is here there is a contract dispute. There's no doubt about it. But it's not right for decision. And here's why. Because there's one thing missing from the complaint. What's missing is that they want Motorola to perform. They can't allege that, because seven years ago we sold our capacity to perform. We cannot perform this contract. We're a cell phone company, not a transit smart card company. They never objected when we sold it. So what they're – so what they've done now is ERG is performing this contract. There's no threat to this contract being performed. I did put my question very artfully, but I guess let me put it this way. Isn't there a damage and a violation of an anti-assignment clause independent of whether or not a contract is being performed or not in the abstract? Can't one allege that there is – it may be performed just fine by the S&E, but that may not satisfy the concerns of the contracting party. And here it required their consent for a innovation or substitution. And it's our position this is an abstract dispute because they don't put into the complaint a reason why they want Motorola to continue to perform. I think if there was allegations that they need Motorola for these reasons, that reason, if those allegations were in the complaint, that would no longer take it from the abstract. They would say there's a reason why we want this anti-assignment clause maintained. Here – Well, isn't that an argument that you have to imply into the anti-assignment clause a reasonableness factor, that, in other words, that the consent will not be unreasonably withheld? But that's – the language isn't in the anti-assignment clause. Well, and I think that's just getting to the merits, whether it was complied with or not or whether they've done that through an implied innovation.  But in other words, I'm just saying, isn't that a sufficient injury to get to – for them to get standing to bring this action? Your answer is a factual one. We're performing. Therefore, there's no jurisdiction. But to determine that, it seems to me we have to exercise jurisdiction. You may well be right. No, because there's no dispute that the contract's being performed. They admit in their complaint that the contract's being performed. And so there is no issue. Certainly, there could be a contractual dispute. But is it rightful resolution? No, because right now there is no – really, this decision by the court below has no real-world impact. Energy will continue performing the contract because Motorola cannot. They cannot articulate a reason. They say you're on the hook or not. That's the only issue. Right. But how is it – They say you're not. They say you are. Right. And that's not a ripe controversy. And I guess if you look at a couple of these cases I was going to mention, the United States Steelworkers case, that's a situation where Cyclops owned a plant. They sold the plant to a third party, New Boston, and with that plant they sold retiree benefits. And the union that had negotiated those retiree benefits wanted a resolution from the court that said, if this new company, New Boston, goes under, the old company, Cyclops, is on the hook for our retiree benefits. And what the court said was, you know, that certainly would be helpful to resolve that issue, but it's not on the table right now because there's no allegation that New Boston will ever go under and not be able to meet its commitment. Just the same here, there's no allegation by MTC that ERG will not be able to perform. What they're trying to do is resolve an issue that's actually not sufficiently ripe yet for jurisdiction. And that's their sole point. They don't make any single allegation of harm from ERG's continued performance of the contract or that there's any threat whatsoever to it from that. They need to have an injury in order to have an actual controversy and there's none alleged. Now, what I'd like to do is move on to our second point, which is assuming jurisdiction, the district court erred in dismissing Motorola's claim that MTC intended to novate the contract to ERG and replace ERG, I'm sorry, replace Motorola with ERG. Novation is like any other contract and can be made by implication. This court has made clear that under California law, it is not necessary to show novation in writing or orally. It can be established from the actions and conduct of the parties. Now, indeed, the critical inquiry under novation is intent, whether MTC intended to novate the contract to ERG. And that's a whole question that's decided on the facts by the Shrier effect. And novation is a fact-based theory and it's improper for it to be decided on the pleadings without permitting discovery. But that's exactly what the district court did here. Now, under California law, Motorola's counterclaim properly alleged implied novation. It alleged that since 2001, ERG has performed all aspects of the contract and MTC has accepted ERG's performance as basically the prime contractor role and has exclusively dealt with ERG since then. Now, in both of our briefs, we talk about a letter from September 2002 where both parties, in that letter, Motorola and ERG reminded MTC that Motorola had sold its capacity to perform and that ERG would perform all aspects of the contract. Now, in the district court, MTC described that letter as a potential breach of contract. MTC, I'm sorry, Motorola is selling its capacity to perform. And just to go back to our jurisdictional point, they never alleged that they're harmed from this. But in the district court, they described this letter as a breach of contract. Now, on the implied novation point, what do they do in response to this letter? Absolutely nothing. This letter actually suggests that they transfer the contract to ERG and deal directly with ERG on that letter. I'm sorry, in performance of the contract. And what does MTC do? They actually proceed to deal directly with ERG. Our complaint alleges that they've dealt exclusively with ERG since 2001, negotiating change orders with them, dealing directly with ERG to resolve any billing disputes, dealing directly with ERG to resolve contractual disputes arising, even engaging in mediation with ERG, and actually paying all invoices directly to ERG. So these allegations show that MTC has really replaced ERG as the prime contractor role and does not have any view that Motorola is needed to perform this contract. Now, relying on these allegations, we allege that a novation had occurred, that MTC had intended to novate the contract. And although Motorola demanded a jury trial on this issue and tried to seek discovery on MTC's intent, the district court improperly precluded Motorola from pursuing that discovery and decided this factual issue intent on the pleadings. It's our position that that is error and is grounds for reversal. Unless the Court has any further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you, counsel. Good morning. May it please the Court, Jim Hanlon representing Appley, the Metropolitan Transportation Commission. Your Honors, I'll begin with a rhetorical question. If, as counsel indicated, the district court's ruling has no moral impact, then why are we here? Why was this case appealed? Clearly, this is an important issue in dispute between Motorola and MTC. This is a more than $250 million public works contract, and MTC has run into its prime contractor trying to walk off the job and saddle it with the subcontractor. Now, you knew the subcontractor was going to be involved from the beginning, this particular subcontractor. Your Honor, I believe that's in the documents. It was always anticipated that Motorola had the right to use subcontractors, indeed had the right to use subcontractors to perform all or almost all of the work. But when MTC signed the contract with Motorola, it was also clear, first, that Motorola would always keep the ability to perform itself. It would never walk away from its ability to perform the contract. And number two, before Motorola could ever assign the contract to anyone, it had to go to MTC and get MTC's express permission. Yes, that's in the contract. Sometimes you get a case and you wonder, what's really going on here? And I gather what's really going on here is that you don't want, you want the financial solvency of Motorola backing this project. Is that it? That is one aspect. Motorola obviously doesn't do anything under the contract except approving change orders and then delegating that to the subcontractor. That is one aspect, Your Honor. And, of course, Motorola, under the contract, is empowered to use any subcontractor that it likes to perform the work. And there are benefits from MTC's perspective as a public agency to having Motorola administer at least that aspect of this contract. In other words, finding appropriate subcontractors to perform this work, whether it be the current subcontractor or additional subcontractors. I'd like you to walk me through on the counterclaims, why there is no claim stated with respect to motivation. Okay. This all centers around the September 2002 letter from Motorola and ERG. Right. Saying ERG has taken over, I mean, I'm paraphrasing. It's paragraph 51 of the complaint. ERG has taken over Motorola's job under the contract, in essence. That's what it says in the middle of the letter, Your Honor. And the closing is the important part. And this is a direct quotation. It's at ER 107. Motorola remains in the prime contractor role to the MTC without change in its obligations to the MTC under the project agreement until such time as the MTC has agreed to grant consent to assign the contract from Motorola to ERG. That was the express understanding stated by Motorola when it requested assignment in September 2002. It is undisputed by both sides that MTC never responded to that letter and never granted consent to the assignment in writing. And our position is that given the structure of the contract, which requires express approval by MTC of an assignment and requires modifications to the contract, and, of course, we think that who the contractor is is a very important modification, that modifications be in writing and in a change order. Does the State of California have contract law which is different from that as to requirements? Yes, Your Honor. And isn't that what Motorola's charging? They don't suggest that there was anything signed. That's not the evidence. Yes, Your Honor. And they're not asking us to decide that. They're asking us to let it go to a fact finder, to move forward. Now, as a matter of law, why isn't that available to them to prove if they can? Yes, Your Honor. The reason is that if Motorola is to prosecute an ovation case, it has to prove facts that would show conduct by MTC that would be able to prove it, and express acknowledgment by MTC of the contract. Your stronger case is there, but move over to good faith and fair dealing. Yes, Your Honor. Which is not as difficult a case in my view of Motorola as your innovation point. I've read your innovation argument. It's very strong. Why wouldn't they have the opportunity to at least prove under good faith and fair dealing that they have an agreement with MTC? The reason, Your Honor, is because Motorola has left some important gaps in its allegations. And I understand that notice pleading controls. And to be candid with the court, we researched whether there is a heightened pleading standard for breaches of the good faith and fair dealing implied requirement in California. And I don't think there's case law one way or the other on that question. I've never seen one. But that is a — I thought your better argument on that is that you can't get to an ovation through an implied breach of the implied covenant. That's an issue of damage, perhaps. I agree, Your Honor. I was speaking more to Judge Wallace's question about the good faith and fair dealing, the third counterclaim. And I think the reason that that claim is appropriate for judgment on the pleadings of this posture of the case is, first, in September of 2002, in the letter from which I quoted, Motorola expressly states, MTC, it's up to you. We'd like to assign to ERG. We're exiting the business. But we recognize, pursuant to the contract, that until you grant us your permission, that we remain the prime contractor. Now Motorola is contending, five years later, that somehow MTC's decision not to take that invitation violated the duty of good faith and fair dealing. And the allegation made in the third counterclaim is wholly conclusory. What you don't see is any allegation anywhere by Motorola that ERG can provide equivalent performance or equivalent security. Well, all I need is notice pleading. We're jumping ahead now to summary judgment, which you may well win. But the issue before us is not whether you're going to win on that issue, but whether the pleading itself, under notice pleading, is sufficient to let them try. I agree, Your Honor. And our position is that it's not, given the documents that are incorporated into both the complaint and in the counterclaims. And, again, I'll circle back to the September 2002 letter, where Motorola, in that letter, which is the only time it goes on the record on the subject, expressly says, you have a choice, MTC, you can consent to the assignment or you cannot consent to the assignment. Let me stop you right there. As I understand the state of the record, you've never responded. Your client's never responded to that. Never in writing, Your Honor. That's correct. I mean, you said today we decline, but I gather that's all oral and by inaction, right? Your Honor, yes. I think the state of the record is that it would be an implicit declination of the invitation to assign. And your construction of the clause gives you complete discretion on whether to grant approval of the assignment or not, right? That's true, Your Honor. Okay. So isn't that classic breach of the covenant of good faith and fair dealing? If you don't take any action on the request, don't they have an argument that they present to the judge or jury that they've left this matter to your discretion, they asked you, and you didn't respond? I think, Your Honor, for them to get past the pleading stage, they have to lay the foundation on which they could possibly prevail. And that is not just a bald statement that we violated the implied duty of good faith and fair dealing. I think what they need to say, and it has to be somewhere in their counterclaims, which, by the way, are pleaded in almost 100 paragraphs, that they're Well, we don't have a numerical bar. I understand, Your Honor. What I'm saying is they weren't exactly nonverbose. But what they never said was that their proposed assignee could provide equivalent performance or equivalent security. Why is that necessary? Well, Your Honor, if you're going to allege that we have violated the implied duty of good faith and fair dealing, you have to show that we are acting arbitrarily. Right. But you didn't say that's the problem. If you said no, I would agree with you. If you said in writing, no, we declined because this substitute company is not getting equivalent performance, then the question would be one of reasonableness. But isn't there a theory that you have an obligation to respond to their request for assignment one way or the other? And it's arbitrary and capricious not to respond at all? I really don't think that Motorola thought it was arbitrary and capricious not to respond, Your Honor. They wrote that letter in September of 2002. I'm talking about the pleadings here. I'm not talking about whatever action that you've had between you. But the theory is there was a matter committed to your discretion and you refused to act on it. And, Your Honor, I'm not trying to go beyond the pleadings. I'm referencing the documents that are incorporated into them, which are the September 2002 letter where Motorola says your choice one way or the other, to which we did not respond in writing. And the record is silent. Motorola is silent to any complaint by Motorola thereafter saying, hey, we need to hear from you on assignment. No, their whole theory is that if you keep accepting the performance, that somehow they'll edge their way into an ovation. I mean, I can understand their position. But, I mean, the theory of the breach of covenant is that you had a matter committed to your discretion and didn't respond one way or the other. I mean, I understand if they pled it differently and said you declined it and that was unjustified based on the circumstances, you were unreasonable in the exercise of your discretion, that would be a different matter as well. But why can't they say it's arbitrary and capricious not to respond for six years to our request for assignment? May I, Your Honor? I'm going to go grab their counterclaim. I believe the relevant paragraph is paragraph 73. And it's not based on a non-response, Your Honor. It says, to the extent MTC has not approved through an ovation, assignment, or delegation, ERG's performance of the TransLink contract in lieu of Motorola, MTC has unreasonably and in breach of its duty of good faith and fair dealing, withheld such approval, causing injury and threatened injury to Motorola. So it's not about not responding. It's about not approving. This is paragraph 73 of their counterclaims. Well, there's also 72, which says including but not limited to a duty to consider and negotiate in good faith the request. So I think that's what I was talking about. And that's what I read into paragraph 72. I see that, Your Honor. And I guess the place to look at this is to boil this all down to what they really asked for is paragraph 74, when they lay out exactly the declaratory relief they're asking for. And if you look, they ask for a declaration that we breach the duty by withholding approval, and that as a result of the conduct, Motorola is relieved from its responsibilities. Well, they do that in part because as a matter of pleading, if you incorporate the letter, it also asserts that ERG is fully capable of performing and providing everything that's necessary. I mean, you dispute that, obviously, but that is part of the pleadings, and that supports as a matter of pleading the assertion that approval was unreasonably withheld. Well, Your Honor, the letter was written in September 2002. The counterclaims were drafted in 2007. I think that if the assertions that were in the 2002 letter could be made without violating Rule 11, then they would have been stated in 2007. Could I ask you one other question? I know there's a lot to this case, and we've read your briefs and your stats, so we're just kind of focusing on some areas that we need clarification. And one that I need clarification on is the letter of credit, that is, whether or not they could reduce the letter of credit. As I understand the argument is that no, they can't. There is nothing in here they get a reduction of credit because they had to continue to renew. But as I read the record, it didn't say continue to renew at the same amount. It just said continue to renew. So doesn't that leave open their separate affirmative defense that there was supposed to be a decrease, a reduction, in the letter of credit? Reading from paragraph 3.1 of the contract, Your Honor, the amount of the letter of credit shall be $3 million at least until the date upon which contractor achieves final acceptance of Phase 2. Final acceptance of Phase 2, this is not before the Court, but it hasn't happened yet. So the condition stated in the contract for decrease of the annual letter of credit has not occurred yet. So under the contract, they are still required. I thought that was the bonds. I got them mixed up. The bonds couldn't be increased, couldn't be decreased until so many days after Phase 2. But does that include the letter of credit, too? It can't be decreased? The letter of credit is in Section 3.1, and the bonds are in Section 3.2. What I just read, to Your Honor, applies to the letter of credit. The letter of credit shall stay at $3 million until at least the date upon which the contractor achieves final acceptance of Phase 2. The bonds have to remain in place, have to have a term. And the bonds are not annual. They have to have a longer term ending 90 days following the last day of the period allowed under the contract for final acceptance of Phase 2. So when the parties were starting, what they contemplated was Motorola was going to have a series of annual letters of credit, which could stop renewing once Phase 2 was completed. But the performance and payment bonds had to have a continuous term from the inception. They continued until 90 days after Phase 2. And your argument is that the letter of credit is the same? The letter of credit is the same, Your Honor. It has to be renewed annually until Phase 2 is accepted. Annually at the same amount? Annually at $3 million. That's expressed in Section 3.1 of the contract. And the reason we were never put on notice that they have this theory that we were put on notice that they had breached the letter of credit provision because it was the letter of credit that they initially obtained was set to reduce to $1.5 million on January 1, 2004. Well, what they'd actually done is overperformed. They were only required to give us a one-year letter of credit, and they gave us a four-year letter of credit. And we had no way of knowing until January 1, 2004 whether they would get a new letter of credit, whether they would increase the amount of the letter of credit to $3 million if the parties had not completed Phase 2 by that point. They actually overperformed at the beginning rather than underperformed. I'm out of time, but if the Court has any further questions, I'm glad to address them. Well, just one. It doesn't have anything to do with the merits, but you have an ongoing relationship here. It's an important project for the Bay Area. And sometimes these disputes seem divorced from the real world. Would the assistance of the circuit mediator aid you in resolving these ongoing controversies? Because I expect this isn't the end of it. Now, it doesn't affect our decision, but you might think about that. And if that's appropriate, you can let us know. And I'll ask your opponent, too. If you think there's no hope of settlement, you can let us know that, too. Your Honor, I can tell the Court that we have engaged in substantial talks with Motorola about this subject and trying to chart a path forward. My client's sole interest is to have translate up and running and serving the people of the Bay Area and to protect the taxpayers' investment to this point, which is on the order of about $45 million. So to the extent a meeting with the circuit mediator could help us accomplish that goal, we'd be glad to do so, although I have to say I'm skeptical. I'm skeptical. Very good. And we don't – when we raise these questions, our argument has nothing to do with our decision. We just want to see if there's some aspect of the controversy that we can assist in resolving. I appreciate the sentiment, Your Honor. Thank you. Counsel? Thank you. And just to follow up that last point, Your Honor, we, too, would be interested in – we've actually been engaged in discussions, and to the extent a third circuit mediator – I'm sorry, a ninth circuit mediator would assist, that would be useful as well. We agree. We don't think this really should be an issue here. This should be resolved easily because ERG has been performing this contract, and we don't understand what the concern is. I mean, you raised here, you asked the question, what exactly is going on here? Is it Motorola's financial solvency? We don't know because they never allege a harm from ERG continuing to perform, and so that is one of the problems with their complaints. And I also point out that there are bonds in place of over $40 million. Now, what I'd like to say is you point out this as well. With respect to assignment and novation, they have never declined our offer for ERG to continue to perform the contract. They just never responded. There was no oral declination. There was nothing. They just proceeded to do what we suggested they do, deal directly with ERG in the future, and that's what they did. I take that point, but I'm not sure it gets you in this case. I mean, you asked for – so if you get a direction that they have to respond, they're going to say no, and then generally you wouldn't second-guess that decision as a court if they have some substantial reason for doing it, financial or otherwise. Well, no, I think that goes to my second point. We're really not arguing novation through breach of the good faith and fair dealing. What we're arguing novation is their conduct, their intent. We sold our capacity to perform in 2001. We are now a cell phone company. We do not perform transit smart card services at all. They did nothing, never objected, never raised anything, and proceeded to deal directly with ERG, a company that had been on board from the beginning. Our proposal was an alliance with ERG, and they dealt directly with them in all aspects, never saying one thing to us. And so our argument is not through the breach of the covenant. That's a third counterclaim. Our argument is through their conduct, they've essentially replaced Motorola with ERG by not raising any allegations, never objecting to our decision to exit the smart card industry and, frankly, to exit the contract. We got out. We were not involved in this contract at all since 2001. So that's our argument. From those allegations, we believe we've asserted a novation claim that we should proceed to discovery. Let me ask you a question about the breach of the implied covenant. You did not ask for damages. You asked for declaratory relief from that. Is there a case that supports that form of remedy for the breach of the implied covenant? I don't think I've ever seen a case in which a declaratory relief has been awarded for breach of the implied covenant. Actually, though, Your Honor, we are relying upon an express provision in the contract that says they would adequately consider changes to the positions of the parties. It's in the recitals of the contract. It's in the record. I can get that for you. So we are arguing that they actually breached the contract because it required them to negotiate with us in good faith to the extent there was going to be a change in the parties. No, I understand your theory, I think. Your theory is that it's a breach of the implied covenant for them not to respond. And you have several theories, not to respond to your request. Right. But normally, the quasi-contractual theory of breach of the implied covenant has the remedy for that is damages. Can you cite me any case, and I know I'm just hitting with this cold, in which declaratory relief has been awarded? Because I looked, I was puzzled by this. I looked through California law, and I don't see a case in which the remedy for a breach of the implied covenant has been allowed as declaratory relief on a contract. Right. And the reason, I think, is because they're antithetical. The contract is the contract. And you can have a declaration of rights under the contract, but the implied covenant involves conduct and usually involves conduct that might result in damages. Right. And I don't have it. Well, I guess my first point is we are relying upon the express terms of the contract. We were seeking a declaration under the express terms of the contract. I know you were, but on this particular count. No, even on that count, the duty of the breach of duty of good faith, we allege that there is an express duty of good faith in the contract. The recitals is one of them. There's also a duty that they would not hinder our performance. And that is essentially a duty of good faith. They would not hinder the performance of the contract. They have by withholding any response to our letter whatsoever. So if I understand your answer to Judge Thomas, you're saying that it's not the typical breach of good faith that's a tort. It's really a contract breach of good faith, so it's all contractual. Right. We were relying upon the Declaratory Judgment Act because we believe there's an express contractual provision and that it has been breached. And the Declaratory Judgment Act does provide that you can then pursue further remedies after that, and perhaps that would be something we would consider. But we relied upon it because we wanted a clear indication that they failed to respond to the letter and breach of the express contract. Right. But there's also a bunch of California law to the effect that duties to consider, duties to negotiate, essentially are non-enforceable, too. So I'm not sure where all this gets you. And I'm not sure whether it's not the district court didn't reach the issue, but I'm not sure it's not barred under a different theory. Right. And I think where mainly our allegations with respect to them not responding and proceeding to deal directly with the RG is our innovation theory, our theory that that conduct is enough here to demonstrate intent to innovate. Okay. I see I'm out of time. Thanks, Your Honor. Thanks, both, for your arguments. It's an interesting and important case, and it will take it under submission. We'll also take a ten-minute break before the next. Thank you. Thank you.   Thank you. Thank you, Your Honor. Thank you. Thank you. Thank you. Thank you. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you. Thank you, Your Honor. It's always tough to be last on a long calendar. You have to listen to a lot of other cases, so now you can sympathize with us. But having been in your position, I was always sitting back there saying, why aren't they thinking about my case? Are they going to forget about it? We haven't forgotten about your case. So we'd be delighted to hear your arguments now. Thank you. Take your seat.
judges: Wallace, Thomas, Graber